ROBERT S. SHWARTS (SBN 196803)
rshwarts@orrick.com
ANA M. MENDEZ-VILLAMIL (SBN 344768)
amendez-villamil@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

ROBERT L. URIARTE (SBN 258274)
ruriarte@orrick.com
ANDREA MAZINGO (SBN 300824)
amazingo@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
555 S. Grand Ave.
Ste. 2700
Los Angeles, CA  90017
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

***Additional Counsel on Signature Page

*Attorneys for Defendants*
Chongji Huang, Puxi Zhou, Weiwei Zhao, and
Weichong Semiconductor Group

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEMTOMETRIX INC.,<br><br>        Plaintiff,<br><br>      v.<br><br>CHONGJI HUANG, an individual;<br>PUXI ZHOU, an individual; WEIWEI<br>ZHAO, an individual; and WEICHONG<br>SEMICONDUCTOR GROUP,<br><br>        Defendants. | Case No. 8:22-cv-01624-CJC-KES<br><br>**DEFENDANTS WEICHONG SEMICONDUCTOR GROUP'S RESPONSE TO COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS AND BREACH OF CONTRACT** |

1
2
3

Defendant Weichong Semiconductor Group ("Weichong") hereby responds to Plaintiff FemtoMetrix, Inc.'s ("Plaintiff" or "FemtoMetrix") Complaint as follows:

4

## INTRODUCTION

5
6

1.      Weichong lacks sufficient information to either admit or deny the allegations of paragraph 1, and on that basis denies them.

7
8

2.      Weichong lacks sufficient information to either admit or deny the allegations of paragraph 2, and on that basis denies them.

9
10
11
12
13

3.      Weichong denies that "[t]he Harmonic F-Series is a highly complex measurement tool, the building, calibration, and use of which all involve highly confidential and specialized trade secret information of FemtoMetrix."  Weichong lacks sufficient information to either admit or deny the remaining allegations of paragraph 3, and on that basis denies them.

14
15
16
17
18

4.      Weichong admits that, while employed at FemtoMetrix, Chongji Huang ("Huang"), Puxi Zhou ("Zhou"), Weiwei Zhao ("Zhao") were trained and acquired experience in building, calibrating and using the Harmonic F-Series and had access to FemtoMetrix's information in the course of their job duties.  Except as expressly admitted, Weichong denies the remaining allegations of paragraph 4.

19

5.      Weichong denies the allegations of paragraph 5.

20
21
22

6.      Weichong admits that Huang announced his resignation on September 28, 2020 and left the company on November 10, 2020.  Except as expressly admitted, Weichong denies the remaining allegations of paragraph 6.

23

7.      Weichong denies the allegations of paragraph 7.

24

8.      Weichong denies the allegations of paragraph 8.

25
26
27

9.      Weichong admits that Zhou announced his resignation on December 30, 2020 and left the company on January 19, 2021.  Weichong admits that Zhou executed a termination certification on January 19, 2021 stating that he

28

RESPONSE TO COMPLAINT FOR
MISAPPROPRIATION OF TRADE SECRETS AND
BREACH OF CONTRACT
8:22-cv-01624-CJC-KES

did not have in his possession, nor has he failed to return, "any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, or other documents or property" belonging to FemtoMetrix, and that he "will preserve as confidential all Company Confidential Information." Except as expressly admitted, Weichong denies the remaining allegations of paragraph 9.

10. Weichong denies the allegations of paragraph 10.

11. Weichong denies the allegations of paragraph 11.

12. Weichong denies the allegations of paragraph 12.

13. Weichong denies the allegations of paragraph 13.

14. Weichong denies the allegations of paragraph 14.

## THE PARTIES

15. Weichong lacks sufficient information to either admit or deny the allegations of paragraph 15, and on that basis denies them.

16. Weichong admits the allegations of paragraph 16.

17. Weichong admits the allegations of paragraph 17.

18. Weichong admits the allegations of paragraph 18.

19. Weichong denies the allegations of paragraph 19.

## JURISDICTION AND VENUE

20. Weichong admits the allegations of paragraph 20.

21. Weichong admits that venue is proper in this District under the provisions of 28 U.S.C. § 1391(b), because a substantial portion of the alleged events or omissions giving rise to the purported claims occurred in this judicial district. Except as expressly admitted, Weichong denies the remaining allegations of paragraph 21.

22. Weichong denies the allegations of paragraph 22.

23.     Weichong denies the allegations of paragraph 23.

24.     Weichong denies the allegations of paragraph 24.

25.     Weichong admits the allegations of paragraph 25.

26.     Weichong denies the allegations of paragraph 26.

## FACTS COMMON TO ALL CLAIMS

### FemtoMetrix is a Leader in Optical Non-Visual Defect (NVD) Metrology

27.     Weichong denies that FentoMetrix's "product research and development include proprietary and trade secret information that is highly confidential." Weichong lacks sufficient information to either admit or deny the remaining allegations of paragraph 27, and on that basis denies them.

28.     Weichong lacks sufficient information to either admit or deny the allegations of paragraph 28, and on that basis denies them.

29.     Weichong denies the allegations of paragraph 29.

### Chongji Huang, Puxi Zhou, and Weiwei Zhao Become FemtoMetrix Employees

**a.     Defendant Chongji Huang**

30.     Weichong admits the allegations of paragraph 30.

31.     Weichong admits the allegations of paragraph 31.

32.     Weichong admits that Huang's optical engineering role gave him access to certain FemtoMetrix information. Except as expressly admitted, Weichong denies the remaining allegations of paragraph 32.

33.     Weichong admits that in June 2019, Huang became a FemtoMetrix investor, gaining access to certain financial information. Except as expressly admitted, Weichong lacks sufficient information to either admit or deny the allegations of paragraph 33, and on that basis denies them.

**b.     Defendant Puxi Zhou**

34.     Weichong admits the allegations of paragraph 34.

35.     Weichong admits the allegations of paragraph 35.

36.     Weichong admits that Zhou's R&D engineering role gave him access to certain FemtoMetrix information.  Except as expressly admitted, Weichong denies the remaining allegations of paragraph 36.

**c.     Defendant Weiwei Zhao**

37.     Weichong admits the allegations of paragraph 37.

38.     Weichong admits that Zhao's engineering role gave him access to certain FemtoMetrix information.  Except as expressly admitted, Weichong denies the remaining allegations of paragraph 38.

**Defendants Had Access to FemtoMetrix's Trade Secret Information**

39.     Weichong admits that Huang and Zhou were involved in researching different options for component parts to include in Harmonic F-Series' sub-systems and ensure functionality of the Harmonic F-Series.  Weichong admits that they have firsthand knowledge of tasks related to the design and implementation of the Harmonic F-Series' sub-systems, including electrical, optical, and opto-electrical sub-systems.  Except as expressly admitted, Weichong denies the remaining allegations of paragraph 39.

40.     Weichong admits the allegations of paragraph 40.

41.     Weichong admits that Huang, as Vice President of System and Field and an optical engineer, was trained on how to align and calibrate Harmonic F-Series tools, was among those responsible for updating alignment and calibration procedures, and held training courses teaching other FemtoMetrix engineers those procedures.  Weichong admits that Zhou, an electrical engineer with software coding experience, was also trained on aligning and calibrating the Harmonic F-Series tools and tasked with teaching courses to other FemtoMetrix engineers related to the same.  Except as expressly admitted, Weichong denies the remaining allegations of paragraph 41.

42.     Weichong admits that Huang and Zhou worked with FemtoMetrix's customers to collect and measure semiconductor wafer samples using the Harmonic F-Series during the course of their job duties.  Weichong admits that Huang and Zhou were involved with processing, adjusting, and interpreting the measurement data to reveal the samples' properties and/or defects.  Except as expressly admitted, Weichong denies the remaining allegations of paragraph 42.

43.     Weichong admits that Zhou's job duties included writing source code for FemtoMetrix.  Except as expressly admitted, Weichong denies the allegations of paragraph 43.

44.     Weichong denies the allegations of paragraph 44.

45.     Weichong admits the allegations of paragraph 45.

46.     Weichong admits the allegations of paragraph 46.

**Huang Solicits Investment for His New Competitor Business While Employed by FemtoMetrix**

47.     Weichong denies the allegations of paragraph 47.

48.     Weichong admits that Weichong Semiconductor is based in China. Except as expressly admitted, Weichong denies the remaining allegations of paragraph 48.

49.     Weichong denies the allegations of paragraph 49.

50.     Weichong denies the allegations of paragraph 50.

51.     Weichong denies the allegations of paragraph 51.

52.     Weichong admits that Huang did not inform FemtoMetrix of any use of information for his own purposes because he did not use any FemtoMetrix confidential information for his own purposes.  Except as expressly admitted, Weichong denies the allegations of paragraph 52.

1

2

**Huang Convinces Zhou and Zhao to Breach their Obligations to**
**FemtoMetrix**

3

53.    Weichong admits the allegations of paragraph 53.

4

54.    Weichong denies the allegations of paragraph 54.

5

55.    Weichong denies the allegations of paragraph 55.

6

56.    Weichong denies the allegations of paragraph 56.

7

**In His Final Days at FemtoMetrix, Zhou Exfiltrates FemtoMetrix's**

8

**Confidential Information and Attempts to Cover His Tracks**

9

57.    Weichong denies the allegations of paragraph 57.

10

58.    Weichong denies the allegations of paragraph 58.

11

59.    Weichong denies that "after the laptop's files were copied onto the

12

Seagate external hard drive, Zhou reformatted the hard drive on his work laptop to

13

cover his tracks."  Weichong lacks sufficient information to either admit or deny

14

the remaining allegations of paragraph 59, and on that basis denies them.

15

60.    Weichong denies that "[s]hortly thereafter, Zhou re-installed the

16

Windows 10 operating system to further cover his tracks."  Weichong lacks

17

sufficient information to either admit or deny the remaining allegations of

18

paragraph 60, and on that basis denies them.

19

61.    Weichong denies the allegations of paragraph 61.

20

62.    Weichong admits the allegations of paragraph 62.

21

63.    Weichong admits the allegations of paragraph 63.

22

64.    Weichong admits that Zhou emailed counsel for FemtoMetrix on April

23

22, 2022 denying that he improperly accessed FemtoMetrix information.

24

Weichong admits that Zhou stated that the referenced USB drive was a Logitech

25

mouse he used when employed by FemtoMetrix, and that it is "not possible to copy

26

any Company Confidential Information onto that device."  Weichong admits that

27

Zhou asked counsel for FemtoMetrix to "review the email chain carefully" and

28

RESPONSE TO COMPLAINT FOR
MISAPPROPRIATION OF TRADE SECRETS AND
BREACH OF CONTRACT
8:22-cv-01624-CJC-KES

welcomed further questions.  Except as expressly admitted, Weichong denies the remaining allegations of paragraph 64.

65.     Weichong admits that counsel for FemtoMetrix emailed on May 2, 2022 asking Zhou about a Seagate external hard drive and accusing him of copying hundreds of folders from his work laptop five days before his resignation from FemtoMetrix.  Except as expressly admitted, Weichong denies the remaining allegations of paragraph 65.

66.     Weichong admits that Zhou did not respond to the May 2, 2022 email from counsel for FemtoMetrix.  Except as expressly admitted, Weichong denies the remaining allegations of paragraph 66.

**The 10 Gigabytes of FemtoMetrix Work Files Taken by Zhou Include FemtoMetrix's Proprietary, Trade Secret Information**

67.     Weichong denies the allegations of paragraph 67.

68.     Weichong denies the allegations of paragraph 68.

69.     Weichong denies the allegations of paragraph 69.

**Huang Improperly Linked His Personal and Work Accounts to Access Files**

70.     Weichong denies the allegations of paragraph 70.

71.     Weichong denies the allegations of paragraph 71.

72.     Weichong denies the allegations of paragraph 72.

73.     Weichong admits the allegations of paragraph 73.

74.     Weichong denies the allegations of paragraph 74.

**Defendants Continue Using FemtoMetrix Confidential Information, Causing Harm to FemtoMetrix**

75.      Weichong denies the allegations of paragraph 75.

76.     Weichong denies the allegations of paragraph 76.

## FIRST CAUSE OF ACTION

### Violation of Defend Trade Secrets Act, 18 U.S.C. § 1836

### (All Defendants)

77.   Weichong incorporates its responses to paragraphs 1 through 76 in response to paragraph 77.

78.   Weichong denies the allegations of paragraph 78.

79.   Weichong denies the allegations of paragraph 79.

80.   Weichong denies the allegations of paragraph 80.

81.   Weichong denies the allegations of paragraph 81.

82.   Weichong denies the allegations of paragraph 82.

83.   Weichong denies the allegations of paragraph 83.

84.   Weichong denies the allegations of paragraph 84.

85.   Weichong denies the allegations of paragraph 85.

86.   Weichong denies the allegations of paragraph 86.

## SECOND CAUSE OF ACTION

### Violation of California Uniform Trade Secrets Act, Cal. Civ. Code §§3425 *et seq.*

### (All Defendants)

87.   Weichong incorporates its responses to paragraphs 1 through 86 in response to paragraph 87.

88.   Weichong denies the allegations of paragraph 88.

89.   Weichong denies the allegations of paragraph 89.

90.   Weichong denies the allegations of paragraph 90.

91.   Weichong denies the allegations of paragraph 91.

92.   Weichong denies the allegations of paragraph 92.

93.   Weichong denies the allegations of paragraph 93.

94.    Weichong denies the allegations of paragraph 94.

95.    Weichong denies the allegations of paragraph 95.

96.    Weichong denies the allegations of paragraph 96.

### THIRD CAUSE OF ACTION

**Breach of Contract**

**(Chongji Huang)**

97.    Weichong incorporates its responses to paragraphs 1 through 96 in response to paragraph 97.

98.    Weichong admits the allegations of paragraph 98.

99.    Weichong admits that, under his consulting agreement, Huang agreed he would "not, during or subsequent to the term of this Agreement, (i) use the Confidential Information for any purpose whatsoever other than the performance of the Services on behalf of the Company or (ii) disclose the Confidential Information to any third party." Weichong admits that, in the consulting agreement, Confidential Information is defined as "any non-public information that relates to the actual or anticipated business or research and development of the Company, including, but not limited to, the Company's technical data and trade secrets." Weichong admits that, under the consulting agreement, Huang also agreed to "take all reasonable precautions to prevent any unauthorized disclosure of such Confidential Information." Weichong admits that, under the consulting agreement, Huang agreed to "upon termination of this Agreement . . . deliver to the Company . . . Confidential Information that Consultant may have in Consultant's possession or control." Except as expressly admitted, Weichong denies the remaining allegations of paragraph 99.

100.    Weichong admits the allegations of paragraph 100.

101.    Weichong admits that, under his employment agreement, Huang agreed to "hold in the strictest confidence, and not to use, except for the benefit of

the Company, or to disclose to any person, firm or corporation without written authorization of the President or the Board of Directors of the Company, any Company Confidential Information," which is defined in the Employment Agreement to include "any non-public information that relates to the actual or anticipated business, research or development of the Company, including, but not limited to, the Company's technical data and trade secrets."  Weichong admits that the employment agreement also required that, upon Huang's separation from employment with FemtoMetrix, he would "immediately deliver to the Company, and will not keep in [his] possession, recreate or deliver to anyone else, any and all Company property in [his] possession or control, including, but not limited to, Company Confidential Information. . . ."  Except as expressly admitted, Weichong denies the remaining allegations of paragraph 101.

102.   Weichong admits that in his employment agreement, Huang Agreed to a "Solicitation of Employees" clause providing that "for a period of twelve (12) months immediately following the termination of my relationship with the Company for any reason, whether voluntary or involuntary, with or without cause, I shall not either directly or indirectly solicit any of the Company's employees to leave their employment, or attempt to solicit employees of the Company, either for myself or for any other person or entity."  Except as expressly admitted, Weichong denies the remaining allegations of paragraph 102.

103.   Weichong denies the allegations of paragraph 103.

104.   Weichong denies the allegations of paragraph 104.

105.   Weichong denies the allegations of paragraph 105.

## FOURTH CAUSE OF ACTION

### Breach of Contract

### (Puxi Zhou)

106.   Weichong incorporates its responses to paragraphs 1 through 105 in response to paragraph 106.

107.   Weichong admits the allegations of paragraph 107.

108.   Weichong admits that under his consulting agreement, Zhou agreed he would "not, during or subsequent to the term of this Agreement, (i) use the Confidential Information for any purpose whatsoever other than the performance of the Services on behalf of the Company or (ii) disclose the Confidential Information to any third party."  Weichong admits that, in the consulting agreement, Confidential Information is defined as "any non-public information that relates to the actual or anticipated business or research and development of the Company, including, but not limited to, the Company's technical data and trade secrets." Weichong admits that, under the consulting agreement, Zhou also agreed to "take all reasonable precautions to prevent any unauthorized disclosure of such Confidential Information."  Weichong admits that, under the consulting agreement, Zhou agreed to "upon termination of this Agreement . . . deliver to the Company . . . Confidential Information that Consultant may have in Consultant's possession or control."  Except as expressly admitted, Weichong denies the remaining allegations of paragraph 108

109.   Weichong admits the allegations of paragraph 109.

110.   Weichong admits that, under his employment agreement, Zhou agreed to "hold in the strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the President or the Board of Directors of the Company, any Company Confidential Information," which is defined in the Employment Agreement to include "any non-public information that relates to the actual or anticipated business, research or development of the Company, including, but not limited to, the Company's technical data and trade secrets."  Weichong admits that

RESPONSE TO COMPLAINT FOR
MISAPPROPRIATION OF TRADE SECRETS AND
BREACH OF CONTRACT
8:22-cv-01624-CJC-KES

the employment agreement also required that, upon Zhou's separation from employment with FemtoMetrix, he would "immediately deliver to the Company, and will not keep in [his] possession, recreate or deliver to anyone else, any and all Company property in [his] possession or control, including, but not limited to, Company Confidential Information. . . ."  Except as expressly admitted, Weichong denies the remaining allegations of paragraph 110.

111.   Weichong admits the allegations of paragraph 111.

112.   Weichong denies the allegations of paragraph 112.

113.   Weichong denies the allegations of paragraph 113.

114.   Weichong denies the allegations of paragraph 114.

## FIFTH CAUSE OF ACTION

### Breach of Contract

### (Weiwei Zhao)

115.   Weichong incorporates its responses to paragraphs 1 through 114 in response to paragraph 115.

116.   Weichong admits the allegations of paragraph 116.

117.   Weichong admits that, under his employment agreement, Zhao agreed to "hold in the strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the President or the Board of Directors of the Company, any Company Confidential Information," which is defined in the Employment Agreement to include "any non-public information that relates to the actual or anticipated business, research or development of the Company, including, but not limited to, the Company's technical data and trade secrets."  Weichong admits that the employment agreement also required that, upon Zhao's separation from employment with FemtoMetrix, he would "immediately deliver to the Company, and will not keep in [his] possession, recreate or deliver to anyone else, any and all

RESPONSE TO COMPLAINT FOR
MISAPPROPRIATION OF TRADE SECRETS AND
BREACH OF CONTRACT
8:22-cv-01624-CJC-KES

Company property in [his] possession or control, including, but not limited to, Company Confidential Information. . . ."  Except as expressly admitted, Weichong denies the remaining allegations of paragraph 117.

118.   Weichong denies the allegations of paragraph 118.

119.   Weichong denies the allegations of paragraph 119.

120.   Weichong denies the allegations of paragraph 120.

## DEFENSES

Weichong asserts the following separate defenses to Plaintiff's Complaint, without assuming the burden of proof or production on such defenses that would otherwise rest on Plaintiff.  Discovery is ongoing.  The results of discovery may reveal additional defenses to Weichong.  Weichong therefore reserves the right to amend its Answer if appropriate and assert additional defenses.

### First Defense: Failure to State a Claim

Each of Plaintiff's claims is barred, in whole or in part, for failure to state a claim upon which relief can be granted.

### Second Defense: Improper Service of Process

Each of Plaintiff's claims is barred for insufficiency of process or failure to effect proper service on Weichong, as required by Rule 4(d) of the Federal Rules of Civil Procedure, the Hague Convention, and other applicable law.

### Third Defense: Bad Faith Claim of Misappropriation

Plaintiff's First and Second Causes of Action for misappropriation of trade secrets are brought and have been maintained in bad faith, as Plaintiff had no evidence of misappropriation prior to commencing this lawsuit, and continues to maintain this suit, even after having been confronted with exculpatory evidence.

### Fourth Defense: No Protectable Trade Secrets

Plaintiff's First and Second Causes of Action for misappropriation of trade secrets are barred because Plaintiff has not identified a protectable trade secret.

RESPONSE TO COMPLAINT FOR
MISAPPROPRIATION OF TRADE SECRETS AND
BREACH OF CONTRACT
8:22-cv-01624-CJC-KES

Any information identified by Plaintiff lacks independent economic value, is not secret (i.e., is publicly available or known outside Plaintiff's business), and is not owned by Plaintiff.

**Fifth Defense: No Improper Acquisition, Use, or Disclosure of Trade Secrets**

Plaintiff's First and Second Causes of Action for misappropriation of trade secrets are barred because Weichong did not acquire, use, or disclose any trade secret owned by Plaintiff through improper means.

**Sixth Defense: No Reasonable Efforts to Protect Trade Secrets**

Plaintiff's First and Second Causes of Action for misappropriation of trade secrets are barred because Plaintiff did not undertake reasonable efforts to protect its alleged trade secrets.

**Seventh Defense: Waiver**

Each of Plaintiff's claims is barred by the doctrine of waiver.  By conduct, representations, and omissions, Plaintiff has waived, relinquished, and/or abandoned, and is equitably estopped to assert, any claim for relief against Weichong respecting the matters that are the subject of the Complaint.

**Eighth Defense: Laches**

Each of Plaintiff's claims are barred from any recovery against Weichong under the doctrine of laches because of the undue delay in acting upon the matters alleged in the Complaint.

**Ninth Defense: Unclean Hands**

Each of Plaintiff's claims are barred, in whole or part, by the doctrine of unclean hands.

**Tenth Defense: Estoppel**

Each of Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

**Eleventh Defense: Unjust Enrichment**

RESPONSE TO COMPLAINT FOR
MISAPPROPRIATION OF TRADE SECRETS AND
BREACH OF CONTRACT
8:22-cv-01624-CJC-KES

Plaintiff is barred from recovery in whole or in part to the extent that recovery by Plaintiff would constitute unjust enrichment and a windfall to Plaintiff.

## Twelfth Defense: Failure to Mitigate

Plaintiff's recovery is barred, in whole or in part, by its own failure to exercise reasonable care and diligence to mitigate its alleged injuries, losses, or damages.

## Thirteenth Defense: No Damages

Plaintiff is barred from recovery because it has suffered no recoverable damages attributable to Weichong's conduct.  Weichong was neither the cause-in-fact nor the proximate cause of any injury, loss, or damage suffered by Plaintiff. Weichong is not liable for the acts of others over whom it has no control.

## Fourteenth Defense: Speculative Damages

Any damages suffered by Plaintiff are too speculative and uncertain to support an award of damages.

## Fifteenth Defense: Unconstitutionality of Punitive Damages

Plaintiff's claim for punitive damages violates Weichong's constitutional rights.  Weichong alleges that no punitive or exemplary damages should be awarded arising out of the claims made in the Complaint under the law of the United States and California because: (i) an award of punitive or exemplary damages would be unconstitutional under the United States and California Constitutions; specifically, the First Amendment to the United States Constitution and Article I, Section 2 of the California Constitution; (ii) any recovery of punitive or exemplary damages arising out of the claims made in the Complaint would constitute the imposition of a criminal fine or penalty without the substantive or procedural safeguards guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and by Article I, Section 7 of the California Constitution; (iii) the imposition of any punitive or exemplary damages in this

- 16 -

lawsuit would constitute an excessive fine or penalty under Article I, Section 17 of the California Constitution; (iv) any such award is precluded or limited pursuant to Section 3294 of the California Civil Code or the United States Constitution and the Due Process Clause; and (v) punitive damages would violate the United States and California Constitutions and common law because such an award would be based on procedures that are vague, open-ended, unbounded in discretion, arbitrary and without sufficient constraints or protection against arbitrary and excessive awards.

## Sixteenth Defense: Duplicative Damages

Weichong disclaims any duplicative damages that could result in double recovery for Plaintiff.

## Seventeenth Defense: No Injunctive Relief

The alleged injury, loss, or damage suffered by Plaintiff, if any, would be adequately compensated by monetary damages.  Accordingly, Plaintiff's claims do not support injunctive relief.

## Eighteenth Defense: Unknown Defenses

Weichong presently has insufficient knowledge or information on which to form a belief as to whether it may have other separate and/or additional defenses as yet unstated herein, and hereby reserves the right to assert such defenses by amending this Response as discovery continues or by conforming to proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, Weichong prays for relief as follows:

1.      That Plaintiff takes nothing by its Complaint;

2.      For Weichong's cost of suit herein, including reasonable attorney's fees; and

3.      For such other and further relief as the Court deems just and proper.

# DEMAND FOR JURY TRIAL

Weichong hereby demands a jury trial on all claims so triable as provided by Federal Rule of Civil Procedure 38.

Dated:     May 4, 2023

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Robert S. Shwarts*

ROBERT S. SHWARTS
rshwarts@orrick.com
ANA M. MENDEZ-VILLAMIL
amendez-villamil@orrick.com
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:   +1 415 773 5700
Facsimile:   +1 415 773 5759

ROBERT L. URIARTE
ruriarte@orrick.com
ANDREA MAZINGO
amazingo@orrick.com
355 S. Grande Ave.
Ste. 2700
Los Angeles, CA  90071
Telephone:  +1 650 614 7400
Facsimile:  +1 650 614 7401

XIANG WANG (admitted *pro hac vice*)
xiangwang@orrick.com
5701 China World Tower
No. 1 Jianguomeiwai Avenue
Beijing, China 100004
Telephone:   +86 10 8595 5600
Facsimile:   +86 10 8595 5700

*Attorneys for Defendants*
Chongji Huang, Puxi Zhou, Weiwei Zhao, and Weichong Semiconductor Group

- 18 -