UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION - SANTA ANA

| | |
|---|---|
| FEMTOMETRIX, INC, | ) CASE NO: 8:22-cv-01624-CJC-KESx |
| Plaintiff, | ) CIVIL |
| vs. | ) Santa Ana, California |
| CHONGJI HUANG, ET AL, | ) Thursday, June 15, 2023 |
| Defendants. | ) (9:35 a.m. to 10:01 a.m.) |

HEARING RE: NOTICE OF DISCOVERY MOTION
AND TELEPHONIC CONFERENCE [DKT.NOS.63,64]

BEFORE THE HONORABLE KAREN E. SCOTT,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff: JASON L. LIANG, ESQ.
Liang Ly
601 S. Figueroa St., Suite 1950
Los Angeles, CA 90017

For Defendants: ROBERT L. URIARTE, ESQ.
ANDREA MAZINGO, ESQ.
ANNA MENDEZ-VILLAMIL, ESQ.
Orrick Herrington & Sutcliffe
555 S. Grand Ave., Suite 2700
Los Angeles, CA 90071

Court Reporter: Recorded; CourtSmart

Courtroom Deputy: Jazmin Dorado

Transcribed by: Exceptional Reporting Services, Inc.
P.O. Box 8365
Corpus Christi, TX 78468
361 949-2988

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

**Santa Ana, California; Thursday, June 15, 2023; 9:35 a.m.**

**(Remote appearances)**

**THE CLERK:** We are now on the record on Case Number 8:22-cv-1624-CJC-KES; FemtoMetrix, Incorporated versus Chongji Huang, et al.; Magistrate Judge Karen E. Scott, presiding.

Counsel, please go ahead and state your appearances for the record.

**MR. LIANG:** Good morning, Your Honor. This is Jason Liang from the law firm of Liang Ly, LLP appearing on behalf of Plaintiff FemtoMetrix.

**MR. URIARTE:** Good morning, Your Honor. This is Robert Uriarte from Orrick for Defendants and I'm also joined by my colleagues Andrea Mazingo and Anna Mendez-Villamil.

**THE COURT:** Good morning, Counsel.

We are here to talk about a discovery dispute. There's been a Joint Stipulation filed at Docket 63, as well as a Request for an Informal Discovery Conference at Docket 64. And as I understand it, the dispute involves primarily timing for Plaintiffs responding to various discovery that has been propounded by Defendants, as well as the sufficiency of Plaintiff's identification of the allegedly misappropriated trade secrets.

From looking at the docket, I could tell some facts about how this case evolved and I understand that Plaintiff had initially sought a preliminary injunction and that the District

Judge determined that he didn't have a sufficient factual record to do that; but that in an attempt to strike a middle road, he ended up setting a shortened schedule for discovery compared to what a case of this complexity might normally receive such that the discovery cutoff is actually coming up in July.

It appears from the parties' briefing in this dispute, that they have been working on discovery. The written discovery has been propounded, they've been talking about dates for scheduling depositions, they've been collecting and reviewing ESIs, but that they have not been able to do discovery as fast as they had initially anticipated.

The change in an evaluation of how long discovery was going to take might have also been attributable to the fact that Plaintiffs now have new attorneys who may have a more realistic view of things, having gotten into the thick of discovery tasks as compared to the lawyers at the beginning who were making estimates before they really had an understanding of how much discovery was going to be propounded and what it would take to respond.

I see that in response to that timing issue, Plaintiff has asked the District Judge for additional time to complete discovery and a six-month extension of the pretrial deadline.

From Plaintiff's perspective, I think I read in your

papers that you thought you could provide additional substantive responses to discovery by June 30th and complete document production in July, such that depositions would follow that and take place in August, assuming that the District Judge moved the deadlines and gave you sufficient time to do that.

Is that -- am I understanding Plaintiff's position correctly?

**MR. LIANG:** Yes, Your Honor. I think that summation sums it up perfectly from our perspective.

We are moving with due haste to meet the current deadlines, although we do believe an extension or a continuance of the current trial date and pretrial date would allow the parties, both the plaintiff and the defendants, more time to fully explore these issues but under the current deadlines, we do not have a problem with Defendants' request that a supplement to the trade secret disclosures be provided by no later than June 30th. And while we are kind of redoing a lot of the work in the collection that was done before but just not done with the ESI being retained, we are hopeful that our review database will have captured most of this by the end of the week and that the documents that had been previously marked for production will be ready to be produced in short order. So we are moving as quickly as we can under the current set of circumstances.

I will note that much of the requests relating to the

trade secret disclosure supplement overlap with a set of special interrogatories that Plaintiffs have already propounded -- I'm sorry -- Defendants have already propounded but responses to those interrogatories are due today and we anticipate on producing or being able to serve those responses and will be available to meet and confer with Defendants' counsel over any further issues they see and get them what they need at the end of the day for that issue to be mooted and satisfied.

And so we're moving with due haste. We don't have a problem with at least the trade secret disclosure supplement, the June 30th date that they've requested.

**THE COURT:** Well if the District Judge were to grant your ex parte, would you still be operating on a schedule where you would supplement the trade secret disclosures by June 30th due -- as I understood it, there's maybe additional written discovery responses that were also going to be supplemented by June 30th and then it would -- document production it would happen in July. Again, if the District Judge grants your ex parte, is that still the schedule or at that point would you be wanting to shift to a different schedule?

**MR. LIANG:** With respect to the trade secret disclosures, we -- with respect to the trade secret disclosures, we see no reason to slow that process down. I've reviewed the -- my predecessor counsel's disclosures that were

served -- served on the defendant and I do agree that that needs to be supplemented. So my intent is to supplement this well before the end of the month and to work out any additional issues. If there comes a time where we believe we've completed our obligation under the CCP, then that might be a different story but at least at this point my intent is to provide that supplement and before -- under the current schedule, even if -- even if Judge Carney were to grant our ex parte request.

With respect to the documents, we will be producing documents with the goal of -- still the goal of completing the -- substantially completing our production of responsive documents by July, simply because there's a lot of other issues that need to be addressed, even with additional time. Six months is going to be still a pretty tight schedule for a case of this nature. All the defendants as far as I'm aware are in China and there are going to be issues we will need to raise with Your Honor regarding their ability to produce documents or ability to sit for depositions and their time issues. So even if we get the six-month retrieve in terms of the current schedule, I expect that we'll be focused on discovery still and I want to get our discovery out still under the same current schedule.

**THE COURT:** All right. Well then let me ask on the Defense side, if the District Judge grants the additional six months, is there any prejudice to you or reason not to proceed

under the schedule that is being suggested by Plaintiff?

**MR. URIARTE:** So I think part of the problem here is Plaintiff has agreed to supplement its disclosure but that doesn't necessarily get us all the way home. And I don't -- I think that given the nature of the technology in this case, and there their disclosure is not going to suffice.

And this is actually something that we talked about with prior counsel during the Rule 26(f) conference back in March, was that we actually need -- and so let me just back up for a second.

The trade secret disclosure identified six categories of alleged trade secrets and they all referred to extrinsic written materials. So at a minimum, the most important thing that we need from the Court today, is an order requiring a complete trade secrets disclosure by June 30th. So if there are some additional documents, emails, economic documents, whatever, that have to trickle in after the 30th, that's one thing but we absolutely need to get the trade secret materials produced because we've already been prejudiced by having to try and figure out what this case is about without having a full disclosure.

And if I could just make two quick points to provide context for the specific relief that we're seeking.

The first is that when FemtoMetrix filed this case in August of 2022, it attached to the complaint about 500 pages

worth of file names.

(Attorney dropped off of call)

**THE COURT:** Hello, Counsel?

**MR. LIANG:** Your Honor, I think we may have lost counsel for the defendants.

**THE COURT:** Yeah, I don't hear him. We'll give him just a moment to dial back in.

**MR. LIANG:** Absolutely. Thank you, Your Honor.

**THE COURT:** **(To Clerk):** Ms. Dorado, if you are able to send Counsel an email and advise that he's dropped out, I would worry that he might still be speaking and not realize that we can't hear him.

**THE CLERK:** Okay, I will do that, Your Honor.

**(Pause)**

**MR. URIARTE:** Okay, I'm back. I'm so sorry everyone.

**THE COURT:** It's not a problem. That happens with technology sometimes.

**MR. URIARTE:** You know what though? Like this is the first time I've dropped a call at my house on my cellphone in like months so yeah.

Anyway, so I'm not sure what you heard but there are just two points that I wanted to make.

So the first is that the complaint actually has an attachment. It's 500 pages of file names. And so presumably, those are some of the alleged trade secrets. They were the

basis for filing the complaint. And since FemtoMetrix has had since August to look through that list of 500 files and say, "These are the subsets that are trade secrets". So that's the first point and I would think that Counsel could do that by the 30th. At least from that list of 500, tell us what the trade secrets are.

The second thing is, counsel -- former counsel served a 2019 2-10 statement back in January as part of the motion for preliminary injunction. Distinctly and so general that Judge Carney was basically able to recite the trade secrets more or less verbatim in a public scheduling order. So that's the level of generality that we've been given.

But we asked, during the discovery conference back in March, can you please prioritize production of the documents referenced in your disclosure because that will help us really come up with search terms and narrow the scope of the case and former counsel agreed to do that. They agreed that they would prioritize the materials referenced in the statements and that they would begin rolling a production to us in April. And so our concern is like here we are in June, we still don't have a single document.

And I heard Counsel say that they've got some documents that were converted to .pdf that could be produced but now they're redoing that so that we get the metadata. I greatly appreciate that because we discussed during the March

conference that we would be producing all metadata but at a minimum I would think, you know, let us see those .pdf documents, let us get something so that we can get going on this case.

And I think, you know, we appreciate that there’s new counsel, they’re busy, they have asked for some scheduling relief, but that was an ex parte filed last week and it’s almost been a full week and the Court hasn’t granted it. So I don't think it’s fair for any of us to assume that we’re going to get a significant amount of scheduling relief and I think it’s just imperative that we get a firm line in the sand drawn.

By June 30th, we need a complete disclosure and then we can work around if there are some remaining documents and depo scheduling that needs to happen around that, that shouldn't be a problem. But I don't want -- what I don’t want to be in is a situation where Counsel says they’re going to supplement before the 30th, they supplement on the 29th, it’s just another narrative response and we still don’t have documents. And we’ve really got to get going and it’s just essential that we get the materials.

And in general, the materials, it’s like three categories. There are some software applications that are identified, there are some hardware design documents and there’s some measurement data. So those three categories I would think could be found and produced by the 30th, especially

since, presumably, all of the stuff was supposed to be ready to go for a PI hearing back in February. Had that hearing moved forward, the trade secrets would have been essential evidence in the case that would have had to have been admitted in the hearing. So it's hard for me to understand how FemtoMetrix, in January says, "Court, let's have a full blown injunction hearing in February," but now here we are in June and they can't give us the core evidence.

So that's where we're at. We don't want to be unreasonable but, you know, we've already been really severely prejudiced.

And there's an illusion in the Plaintiff's brief to the fact that we've served a bunch of RFAs and interrogatories. The reason we had to do that is 'cause we're sitting here with no documents and so we had to resort to other forms of discovery. Had we gotten the document production timely, I think we probably wouldn't have needed to do half of the written discovery that we did. But we're in a position where we've got a schedule ticking down, we are in the dark, trial is in October, so we're trying to get the information we need by any means necessary and that's why we're here.

**THE COURT:** Well let me ask Mr. Liang.

Since you've been working on the updated trade secret disclosure, do you have a sense of what that's going to look like? Is it going to be a spreadsheet, is it going to have

documents attached, if you know that at this point. What can you share?

**MR. LIANG:** I believe the version that we're working on is going along some of the -- some things Mr. Uriarte has already identified. We're going to what he's pointed us to.

And keep in mind, Your Honor, we've only been on this case maybe less than two months and we're getting our arms around a very complex case but we are doing what he's asking us to do. We are going through these documents, we're identifying them with specificity in the disclosure itself, and we anticipate on being able to serve at least eight -- another draft of it probably within the next week, week and a half. And that would be well in advance of the June 30th date, with the knowledge that we might need to go one more round in meet and confer because I'm not sure that my supplement will fully satisfy Mr. Uriarte. But we're willing to work with him and we're trying to meet these deadlines under the current schedule which is also the reason why we've asked for a continuance of these dates to give the parties more time but until the Court actually grants it, we are operating with the current cutoffs as if they are going to stick.

**THE COURT:** Well, I don't mean to be cagey but I can tell the parties that when I knew this discovery hearing was going to happen, I did reach out to Judge Carney to get a sense of whether he was inclined or not to grant the ex parte. And

he did tell me that he expected to grant the ex parte, that he viewed this as a complex case, and it wasn't surprising to him that the discovery was going to take more time than counsel had originally anticipated when the schedule was set.

So what I would be inclined to do at this point is to deny the pending motion without prejudice but to set a discovery status conference for -- I'd like to do it in early August, like August 9th at 10 -- I'm sorry at 9:30. It would be telephonic.

And I'd ask the parties to file a joint discovery status report the day before on the 8th. And hopefully we can have an understanding at that point if, you know, what the status of document production is, if that's been complete. If there's still a dispute over the identification of trade secrets, if that's going to be teed up in a motion or by some other means.

I do think that since counsel has already acknowledged that the trade secret identification needs to be supplemented and is working on that right now, that it would be premature for the Court to issue orders about what it should or shouldn't contain. Rather, we should let Counsel use his best efforts to provide what he thinks is required under the Rules and appropriate; and if there's a disagreement on whether his disclosures ultimately satisfy those rules, we can take that up at a later date.

Again, I think that trying to set artificial deadlines when Judge Carney has indicated that he intends to grant the ex parte is not ultimately going to be productive in facilitating the appropriate searches and collection efforts that would need to happen in a case of this complexity. So while I'm sure that that may be disappointing to Defendants in the sense that we are not setting any deadlines specifically today, I do think that based on the representations Counsel has made, that things are in progress.

I'm going to count on Counsel to continue to work diligently towards the deadlines that have been -- or the goals that have been described today, even if they ultimately receive a six-month extension in response to the ex parte application, and that they'll continue to meet and confer in good faith. If there's a supplemental trade secret disclosure and there are still disputes about the sufficiency, I would expect by our August 9th discovery conference that the parties would have already identified those deficiencies, discussed those deficiencies, determined if they agree, there's an impasse, or if they're going to have a motion. And again, we can discuss those issues at that time.

**MR. URIARTE:** Your Honor, this is Rob Uriarte.

Could we at least have an order that when we get the supplemental disclosure, that it will include at least some production of documents because my concern is if we just get a

narrative, we're going to still be here in the dark. And I appreciate we're going to have a status conference in August but if we do need motion practice, let's say we get all the way to August and we need motion practice -- and maybe it's, you know, September or October before we get a ruling on the trade secret disclosure -- and by that time (inaudible) the period. So I'm sort of thinking out loud. It kind of depends on the schedule where we ultimately land but I think that any schedule is going to put us behind or put us under the gun and so it's just I would like to at least get some document production.

I mean apparently there's at least some set of documents that were .pdf'd for production and they're just redoing that. So if we could at least get those materials within the next two weeks, that would give us a fighting chance at wrapping our head around what's at stake here.

**THE COURT:** It sounded to me like Mr. Liang was intending to produce a more robust trade secret disclosure by June 30th.

Do you anticipate, Mr. Liang, if that's going to include some documents?

**MR. LIANG:** Yes. I would like to get that document production over to them just as quickly as they would like to receive it too. Part of --

**THE COURT:** Let me just interrupt because I think Mr. Uriarte was talking about two different things. He wasn't

talking about the entire document production. He was talking about some documents that would be provided specifically by June 30th with the trade secret disclosures, understanding that there would be a more fulsome document production that you've been talking about completing in July.

So my question was, do you anticipate that what you're going to produce on June 30th will include underlying documents, some of them that demonstrate what the trade secrets are?

**MR. LIANG:** Yes, I do anticipate that. In fact that is something that we are working on right now to reprocess through a discovery platform so that it could be more easily produced and more easily uploaded for Mr. Uriarte and his team. So yes, I would -- my goal has been to update the trade secret disclosure along with getting those documents prioritized and produced.

And so to the extent that is Mr. Uriarte's request, I'm willing to stipulate to that. By June 30th we will have supplemented and produced, at a minimum, a tranche of documents that demonstrate what the trade secrets are.

**THE COURT:** Very good.

**MR. URIARTE:** That's helpful, I appreciate that.

May I ask, are we on ECRO or is there going to be a transcript of the proceedings?

**THE COURT:** We are on the record and so if the

parties would like a transcript, there's instructions on the website for how to order that.

**MR. URIARTE:** Great, great. We'll do that.

Well I appreciate that. I mean I think we've accomplished what we can, given that the schedule is up in the air and I appreciate that I've got a commitment that we'll receive trade secret documents this month. That's a help. And then I guess we'll have to just wait and see what Judge Carney does and then we'll work cooperatively on getting things lined up.

**THE COURT:** Very good. I appreciate Counsel working together and I will look forward to speaking to you again on August 9th.

**(Attorneys thank the Court)**

**THE CLERK:** Court is adjourned.

**(Proceeding adjourned at 10:01 a.m.)**

**CERTIFICATION**

**I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.**



**June 21, 2023**

**Signed** **Dated**

***TONI HUDSON, TRANSCRIBER***